David Henderson
Law Offices of David Henderson
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone:   907-677-1234
Fax:      888-965-9338
Email:   dh@henderson-law.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALEXA ESTRELLA RAPOSO and ZACHARY THORNTON, individually, and as Parents/Next Friends of A.E.N.T., a minor child,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:23-cv-00157-SLG<br>) |

**Plaintiff Raposo's Opposition to Defendant United States'
"Motion for Protective Order" [Dkt. 16]**

Plaintiffs Alexa Raposo and Zachary Thornton [hereinafter collectively "Raposo"] oppose defendant United States' Motion for Protective Order at Dkt. 16.

Further, in an accompanying cross-motion, Raposo seeks an order -- ● compelling the deposition of Rebecca Arend; ● compelling the production of the subject witness-statements; and/or ● granting an *in camera* review of the statements in question to determine if they are,

*Estrella Raposo, et al v U.S.* - Case No. 3:23-cv-00157-SLG            Page 1 of 8

Case 3:23-cv-00157-SLG   Document 19   Filed 07/25/24   Page 1 of 8

in fact, quality assurance records within the purview of 10 USC § 1102, as claimed.

The grounds for this Opposition and Cross-Motion are: (i) the Government has failed to meet its burden of proof under FRCP 26(b)(5)(A)(ii) in establishing that the requested witness-statements qualify as quality-assurance review records in all particulars; (ii) despite repeated demands, it refuses to say whether the statements were procured by its own Office of General Counsel ["OGC"] as part of its routine litigation-defense activities, and; (iii) it appears that the subject witness-statements ***were*** procured by the OGC as part of its routine litigation-defense activities and are therefore discoverable.

**Rule 37(a)(1) Certification of Attempt at Informal Resolution:** The undersigned certifies that he has attempted to confer with defendant United States' counsel, and has attempted in good faith to resolve this dispute informally. *See* accompanying "Declaration of Counsel," ¶¶ 8 and 12, together with its attached Exhibit "1".

**Memorandum in Opposition**

Raposo's position is easily summarized:

- The undersigned has ***worked for months*** with the Government in trying to ***resolve*** this discovery dispute.[1] He has repeatedly asked the Government for the ***name and title*** of the person who requested (i.e., arranged for and procured)

---

[1] *See* accompanying "Declaration of Counsel," ¶¶ 2-12, and the Declaration's attached Exhibit "1".

the witness-statements in question.[2]  Denied.[3]  He asked the Government to produce that person for ***deposition***.[4]  Denied.[5]  He asked the Government to submit the matter for ***in camera review***.[6]  Denied.[7]

- As for the Government's current briefing, Raposo doesn't question the existence or importance of the quality-assurance protective regime set out in 10 USC § 1102.  But the Government's extensive briefing about § 1102 is merely a ***deflection*** and needless "strawman" argument.[8]

- Nor does Raposo question that Rebecca Arend works at the Bassett Army Hospital, perhaps having some role in its peer-review program -- again, a mere deflection.[9]

---

[2] *See* Exhibit "1", pp. 4, 10, 14, and 17 attached to the accompanying "Declaration of Counsel."

[3] *See* Exhibit "1", pp. 9, 11, and 18 attached to the accompanying "Declaration of Counsel."

[4] *See* Exhibit "1", p. 12 attached to the accompanying "Declaration of Counsel."

[5] *See* Exhibit "1", p. 13 attached to the accompanying "Declaration of Counsel."

[6] *See* Exhibit "1", pp. 4, 6, 8, and 10 attached to the accompanying "Declaration of Counsel."

[7] *See* Exhibit "1", pp. 5 and 9 attached to the accompanying "Declaration of Counsel."

[8] [Dkt. 16, pp. 3-6 [Section II.]]

[9] *See* Dkt. 16-1.  Indeed, that's one of the reasons she wants to take Ms. Arend's deposition -- to ascertain whether the Government's claims are valid and factually correct, as contemplated by FRCP 26(b)(5)(A)(ii).  *See* accompanying "Declaration of Counsel," ¶ 11.

- Raposo instead relies on precedent, namely **_Kulik v. United States_, 2016 WL 3580599, **2-3 (D. Alaska 2016)**. There, Judge Sedwick rejected and overruled an identical "quality-assurance" claim asserted by the Government; he ordered the production of the requested witness statements. *Id.* at 3.[10]

- The Judge held that "[b]ecause the witness statements were **_requested by the OGC_** [Office of General Counsel] **_for litigation purposes_**, the United States' argument is untenable[]" and invalid. [Editorials applied; emphasis added.] *Id.*

- He added, "[t]he OGC cannot **_retroactively transform its litigation activities_** into a medical quality assurance program's activities merely **_by forwarding the claimant's records to risk management for review_**." [Footnoted citation omitted; editorial and emphasis added.] *Id.*, at *3, text accompanying f.n. 25.

- Raposo submits that's exactly what the Government is trying to get away with here -- i.e., "**_cleanse_**" potentially damaging witness statements of their discoverable status by **_funneling them through_** Bassett's so-called "quality-assurance" program.[11]

---

[10] In doing so, he acknowledged that "[m]edical quality assurance records are confidential and generally privileged." *Kulik*, *supra* at *3.

[11] The Government attempts to distinguish *Kulik* on the ground that in that case it was asserting a work-product privilege. Dkt. 16, p. 9, f.n. 2. But the Government made a work-product claim here, as well. *See* accompanying "Declaration of Counsel," ¶ 3 [quoted objection.] Its simultaneous assertion of a work-product privilege disproves any quality-assurance protection -- the two privileges have logically inconsistent elements: the work-

- Raposo has asked the Government several times to identify **_who_** procured the witness statements in question: Was it someone from Bassett's quality-assurance apparatus, or was it **_simply the OGC_**?[12]

- Despite multiple demands, and numerous e-mail "go-'rounds," the Government will not answer that simple question.[13]

- Instead, it wants Raposo and this court to accept its **_ipsit dixit_** -- i.e., its bald self-interested declaration -- that the requested documents are "privileged."[14] That does not suffice.[15]

---

product doctrine requires that the withheld materials be prepared for a **_litigation-related purpose_** while the quality-assurance privilege requires that they not be. *See Kulik v. United States*, *supra*, Case No. 3:14-cv-00054-JWS, 2016 WL 3580599 at *3, n. 24 and accompanying text.

Although Ms. Arend's declaration [at Dkt. 16-1] variously describes Bassett's program as "quality-assurance" and "peer-review," she provides few facts demonstrating the program meets § 1102's highly reticulated elements. *Cf.* Dkt. 16-1, pp. 1-2 with 10 USC § 1102. Hers is merely an ipsit dixit.

[12] *See* Exhibit "1" attached to the accompanying "Declaration of Counsel."

[13] *Id.* The undersigned has also asked to take Ms. Arend's deposition. *See* Exhibit "1" p. 12 attached to the accompanying "Declaration of Counsel." That request, too, has been denied. *See* Exhibit "1", p. 13 attached to the accompanying "Declaration of Counsel."

[14] It argues that Ms. Arend's declaration alone ". . . should end the inquiry, . . .." [Dkt. 16, p. 7.]

[15] The Government bears the burden of proving its privilege claims. *See e.g., Kulik v. United States*, Case No. 3:14-cv-00054-JWS, 2016 WL 3580599, *1, text accompanying n.7, 2016 U.S. Dist. LEXIS 84802 (D. Alaska 2016) [Sedwick, J -- the resisting party "has the burden of clarifying, explaining, and supporting its objections." *See also e.g., Bethel v. U. S. ex rel. Veterans Admin. Medical Center of Denver, Colo.*, 242 F.R.D. 580, 583-84 (D. Colo. 2007) -- construing the parallel Veterans Administration peer-review regime set out in

- No case holds that if a defendant asserts a quality-assurance privilege, it no longer has to comply with FRCP 26(b)(5)(A)(ii), i.e., to "describe the nature of the documents … in a manner that[] … will enable other parties to assess the claim."[16]

- At a minimum, an ***in camera review*** is warranted in order to determine empirically whether the claimed privileges apply.[17] Again, however, the Government refuses to stipulate to one.[18]

- Raposo also seeks leave ***to take Ms. Arend's deposition*** during which she should answer questions about her hospital's quality-assurance program, and facts showing whether § 1102's various elements apply.[19]

---

38 U.S.C. 5705; Held: the Government has to make a "***clear showing***" by describing in detail the documents withheld and the "precise reasons" why the privilege applies. [Emphasis applied.]

[16] Rule 26(b)(5)(A) states that the resisting party "***must***" make a sufficiently detailed disclosure.

[17] *See e.g.*, *Kerr v. United States Dist. Ct. for the Northern Dist. of Calif.*, 426 U.S. 394, 405, 406, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1975) -- "[I]n camera review of [] documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiff's asserted need for the documents is correctly struck[]" [footnote omitted] and, ". . . in camera review is a highly appropriate and useful means for dealing with claims of governmental privilege." [Editorials and ellipses added.] *See also e.g.*, *Akers v. Ohio State Univ. Med. Ctr.*, 2005 WL 2387615, **5-6 (Ohio App. 10 Dist. 2005) -- not conducting an in camera review was an abuse of discretion; *Cannon v. Salt Lake Medical Ctr., Inc.*, 121 P.3d 74, 80 (Utah App. 2005) [same]; *In Re Belmore*, 2004 WL 1983597, *4 (Tex. App. 2004) [same]; *Trangle v. Rojas*, 782 N.E.2d 617, 623 (Ohio App. 8 Dist. 2002) [same].

[18] *See* Exhibit "1", pp. 5 and 9 attached to the accompanying "Declaration of Counsel."

[19] *See* Exhibit "1", p. 12 attached to the accompanying "Declaration of Counsel." Discovery may be had as to matters concerning discovery. *See e.g.*, *ADT Services AG v.*

## Conclusion

The Government's "Motion for Protective Order" should be denied and Raposo's "Cross-Motion for Order Compelling Discovery" granted. Further, Ms. Arend should be ordered to appear at deposition and answer questions concerning 10 USC § 1102's applicability. At a minimum, the court should order an *in camera review* of the witness-statements in question -- it won't be burdensome to do that.

DATED: July 25, 2024        David Henderson
The Law Offices of David Henderson
Attorneys for Plaintiffs Alexa Estrella Raposo,
Zachary Thornton and A.E.N.T

By: /s/ David Henderson
    David Henderson, ABA #9806014

---

*Brady*, 2012 WL 12828182, *2 (W. D. Tenn. 2012) -- the court ordering a re-deposition at which the corporate-designee would testify about the corporation's "document retention practices and what steps were taken to preserve records relevant to this litigation, and [the corporation's] efforts to locate documents responsive to plaintiffs' discovery requests; . . .[,]" and; *Herbig v. Field*, 2013 WL 12153562, **1-2 (D. N.M. 2013) -- the court ordering corporate-designee to answer questions about efforts made to locate responsive documents, under pain of default.

CERTIFICATE OF SERVICE

I certify that on 7/25/24,
the foregoing was sent by e-mail to:

Glenn Shidner, Assistant U.S. Attorney
*Glenn.Shidner@usdoj.gov*

Joshua Traini, Assistant U.S. Attorney
*Josh.Traini@usdoj.gov*

Sarah Klein, Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
*Sarah.E.Klein@usdoj.gov*

Attorneys for Defendant

By: /s/ Teresea Van Dyke